JOHN W. STELWAGON, Trading as JOSEPH STELWAGON & SONS *vs.* WILMINGTON COAL GAS COMPANY.

New Castle County, February Term, 1896.

**Sale. Assumpsit.**—Under an executed contract for the sale of goods, part of which were alleged to be of inferior quality, an action for money had and received will not lie to recover back the price paid therefore.

**Same.**—In the case of goods sold and delivered, if they are of any value and are retained by the purchaser, he cannot recover back the price paid on action of assumpsit.

**Same. Deceit.**—In such case the remedy is by an action of deceit if the price was obtained by fraud or imposition.

Del.]  STELWAGON vs. WILM. COAL GAS CO.  185

Statement.

**Assumpsit.**—The action for money had and received is an equitable action and proceeds upon the principle that he who would have equity must do equity ; hence the plaintiff cannot recover unless the parties can be placed in the same position as before the contract.

**Contract. Rescission.**—While a contract remains executory either party may rescind it for proper reasons, provided he can put the other party in *statu quo*, but not otherwise.

This was an action of assumpsit. The narr contained three counts ; one for money had and received ; one for money laid out and expended ; and one for an account stated. The following bill of particulars was filed :

99,136 gallons water gas tar @ 2¾ cts. per gal...............$2,726.24
Interest from Jan. 29, 1894,.................................  339.51
                                                            _____
                                                .           $3,065.75

At the trial it appeared that an agreement had been entered into by the Wilmington Coal Gas Company January 29, 1889, under which it was to furnish the plaintiff for five years all the coal tar produced at their works in the City of Wilmington, over what they needed for the use of the city for 2¾ cts. per gallon, from which coal tar the plaintiffs manufactured a substance used for paving and roofing purposes. While the contract was in force the Wilmington Coal Gas Company adopted another process for the manufacture of gas, called the water gas process. They shipped the plaintiff 388,202 gallons of tar from the old process and 99,136 gallons from the new process, making 497,338 gallons of tar which was paid for by the plaintiff.

The plaintiffs had been receiving complaints from their customers that their goods were not giving satisfaction. Upon inquiry they learned, but not till after the contract had run out and they had paid for the tar, that they had been receiving from the Wilmington Coal Gas Company, tar made from the water gas process.

And upon experimenting with it found that it was inferior to the coal gas tar and not suitable for the purposes for which they used it, though it had some value. They brought this suit to recover back the price paid for the 99,136 gallons of tar made from the water gas process, claiming that the money was paid under a mistake of facts.

*W. C. Spruance,* for defendant, moved for a non-suit upon the ground that the plaintiff had declared in the common counts, and filed his bill of particulars, instead of by a special count, and that the evidence would not support the declaration. If the defendant company promised to furnish coal tar and did not keep its promise, the plaintiff could not sue on the common counts until he had restored the property. This is certainly true when the property has any value, and it is in evidence that in this case it had value. 1 Chitty, Pl. 388 ; 2 Greenl. Ev. § 124 ; Benj. Sales § 452 ; Keener, Quasi-Contr. 302 ; *Wilson vs. Fisher,* 5 Houst. 395 ; *Richardson vs. Horn,* 8 Houst. 26 ; *Young vs. Argo,* 1 Marvel, 156 ; *Morris vs. Burton,* 4 Harring. 53 ; *Draper vs. Randolph,* 4 Harring. 154.

*J. H. Hoffecker, Jr.,* for the plaintiff, said that the plaintiffs, contracted to pay for all coal tar manufactured, and they had paid for it. But that the defendants also delivered 99,166 gallons of water gas tar which the plaintiffs received and paid for not knowing that it was not coal tar. That it had paid under mistake of facts and could recover back. 2 Greenl. Ev. §§ 177-123 ; 1 Chitty, Pl. 331, 343 ; *Moses vs. McPherland,* 2 Burr. 1004-1012 ; *Burton vs Wharton,* 4 Harring. 296.

CULLEN, J., delivered the opinion of the Court.

The law is well settled, beyond all question, that where there is a contract, while the contract remains executory either party may rescind that contract for proper reasons, provided he can put the other party *in statu quo.* That is to say, a contract to be rescinded, must be rescinded so as to place the parties in exactly the position in

which they originally were. If they cannot be placed in that position, then as a matter of course, there can be no rescission of the contract. It does not follow from that, however, that the party would be without a remedy. There are often cases (and this is one of them) where a contract is made in reference to certain articles, that a portion of them are used, and therefore it is impossible to rescind; for you cannot rescind a part. In other words, there cannot be a partial rescission of a contract, because the contract, being of itself entire, must be rescinded *in toto*, if at all.

It appears from the testimony which we have so far had, that this property, for which they seek to recover, went into the possession of the plaintiff and that the plaintiff used it. Whether the plaintiff says it is of no value to him or not, the fact remains that it had a market value; that it was of some value, according to the proof here. But whether it was of any value or not, does not do away with the necessity of rescinding the contract. A part of this contract covering the 99,136 gallons could not be rescinded, it being an entire contract; and a large proportion of this gas tar has already been used. Under the circumstances, then, they had a perfect right, if the article was defective, to bring their action to recover damages by reason of a breach of that contract. That was their unquestioned right. But the plaintiff cannot be allowed to retain that which he says is worthless; in other words, to retain a portion of the goods, and afterwards sue for breach of contract. He retains that which he says is worthless; but it must be of some value. Therefore the rule of law is laid down, that where a party is deprived of the use of an article, of any value, it matters not how small, he must be placed *in statu quo* before the other party can rescind and sue; otherwise the plaintiff has no right to receive back the money which has been paid.

There is another ground. This, I have said, is an executed contract. It is not executory; after a contract becomes an executed contract, it cannot be rescinded. It is at an end ; nor can the party recover because there is an estoppel. Inasmuch as both parties have complied, it is *functus officio*. But notwithstanding the fact

that the contract is an executed contract yet, if that contract has been obtained through fraud or misrepresentation or if there has been deception, the party still has his right to bring a special action in deceit, for fraud and deception.

Therefore, I say, if fraud and deception have been used in this case, by and on the part of the defendant in the sale of the tar in question; if the defendant imposed upon the plaintiff an article which was not merchantable and not proper to be used, then the plaintiff would have his right, upon proof that the defendant knowingly imposed upon him an article which they knew to be worthless, to recover the money paid, in the way I have stated. He is therefore not without his remedy.

The next question, which is the only one in this case, is: Can an action be supported for money had and received, to recover back money paid under the circumstances I have mentioned.

The action for money had and received is a equitable action. It proceeds upon the well known and well settled principle that he who would have equity, must do equity. Therefore in an action to recover for money had and received, the plaintiff cannot recover unless the parties can be placed in the same position precisely, as in the matter of rescinding contracts. *Hunt vs. Silk*, 5 East 449; *Bend vs. Langford*, Yo. & Jer. 277.

If the plaintiff had a right to recover in this case on this count for money had and received, how could the parties defendant be put *in statu quo*? Whether these goods are worth anything or not, the plaintiff received them. As laid down in one of the cases cited in the argument, even if it is counterfeit coin that has been received still the party must be put back in the same position. But in this case it was proved, that though the article had no value to the parties themselves in the manufacture of the residuum from coal tar, yet it had some market value. Therefore it would be directly in violation of these decisions and of that principle of putting the parties in the same position. The doctrine is uniformly asserted in the English decisions to the effect that no action for money had and received can be brought in a case of this kind where the par-

ties cannot be put in the same position, and the reason is so clear and easy to apprehend that it is not necessary to dwell upon it.

We therefore think, under these circumstances, that inasmuch as these parties cannot be placed *in statu quo,* and the plaintiff, if there was a breach of the contract resulting from the fact that the goods were such as were sold, had their remedy by suing for a breach of contract while the contract was executory or if the price was obtained by fraud and imposition even after the contract expired, they still had a right to bring an action for deceit. But they have no right to recover in a case like this upon the count for money had and received.

We therefore direct that a non-suit be entered.